# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RANNEL BROWN (# 456766)**                                 **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                          **NO. 14-0104-JWD-EWD**

## RULING

This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   The State has filed a response wherein it asserts the procedural objection of untimeliness in response to Petitioner's application.   Petitioner has filed a Traverse in opposition to the State's response.   There is no need for oral argument or for an evidentiary hearing.

Petitioner Rannel Brown challenges his convictions entered in 2006 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.   Petitioner was originally charged with separate counts of (1) second degree murder, (2) armed robbery, (3) possession of stolen property, (4) possession of a controlled dangerous substance, (5) possession of a firearm by a convicted felon, (6) possession of a firearm while in possession of a controlled dangerous substance, and (7) possession of body armor by a convicted felon.   After a bench trial, Petitioner was found guilty of all charged offenses except Count two (armed robbery).   On August 18, 2006, Petitioner was sentenced to life imprisonment on Count One, to five years imprisonment on Count Three, to five years imprisonment on Count Four, to ten years imprisonment on Count Five, to five years imprisonment on Count Six, and to two years imprisonment on Count Seven, with all sentences to run concurrently.

On direct appeal, Petitioner asserted (1) that there was insufficient evidence to support the convictions, (2) that the convictions for possession of a controlled dangerous substance and possession of a firearm while in possession of a controlled dangerous substance constituted double jeopardy, and (3) that the trial court failed to give Petitioner a 24-hour delay between the denial of his motion for new trial and the imposition of sentence as required by state law.   On May 4, 2007, the Louisiana Court of Appeal for the First Circuit overturned Petitioner's convictions as to Counts Three and Four, affirmed Petitioner's convictions as to Counts One, Five, Six and Seven, and vacated the sentences on those four counts and remanded the matter to the state district court for resentencing.   *See State v. Brown*, 956 So.2d 850 (La. App. 1st Cir. 2007).   Petitioner filed a *pro se* application for rehearing in the intermediate appellate court on or about May 18, 2007,[1] which application was denied without comment on July 9, 2007.   Petitioner also sought supervisory review in the Louisiana Supreme Court, which Court denied review, without comment, on March 28, 2008.   *See State v. Brown*, 978 So.2d 299 (La. 2008).[2]   Upon the failure of Petitioner to file

---

[1]     The State contends that Petitioner's application for re-hearing in the state appellate court was untimely because it was docketed in that court on May 21, 2007 and was marked "late" because it was filed more than fourteen (14) days after the district court's decision in violation of state law.   As argued by Petitioner, however, inasmuch as he filed the application for rehearing *pro se*, he is entitled to the benefit of the so-called "mailbox rule," articulated in *Houston v. Lack*, 487 U.S. 266, 271 (1988), which provides that inmates who file pleadings *pro se* are deemed to have filed their pleadings on the date that they place them into the prison mail system for transmission to the court, not on the date that they are received and docketed in the court.   Thus, inasmuch as Petitioner's application was docketed as received in the state appellate court on May 21, 2007, which was a Monday, it stands to reason that Petitioner must have placed the application into the prison mail system no later than May 18, 2007, which was within the 14-day period allowed by state law for filing an application for re-hearing.   Accordingly, it does not appear that that application was untimely in fact.   Whereas the appellate court clerk's office, upon receipt, may have made a notation on the application that it was "late," the court, in a one-word denial of the application, did not signify that it found the application to be untimely.

[2]     In the meanwhile, Petitioner was re-sentenced in the state district court on September 18, 2007, to the same sentences on Counts One, Five, Six and Seven.   It does not appear that Petitioner sought appellate review in connection with the re-sentencing.

an application for a writ of certiorari in the United States Supreme Court, his conviction became final on June 26, 2008, after expiration of the ninety-day period allowed for him to do so.

On March 24, 2009, approximately one year after the decision of the Louisiana Supreme Court, Petitioner filed a counseled application for post-conviction relief ("PCR") in the state district court, wherein he asserted four (4) claims regarding the alleged ineffectiveness of his trial counsel. Pursuant to a Ruling dated September 29, 2011, the state court denied all of Petitioner's claims but one, concluding that an evidentiary hearing should be conducted as to that claim. After an evidentiary hearing held on January 20, 2012, and after the submission of post-hearing memoranda, the trial court denied Petitioner's PCR application on May 30, 2012.

The record reflects that Petitioner's attorney filed in the state trial court, on June 20, 2012, a timely request for a return date to perfect a supervisory writ of review in the intermediate appellate court. Although the trial court granted that request on the same date and set a return date of June 26, 2012, Petitioner's attorney did not meet that deadline. Instead, he filed a second request for a return date on July 26, 2012, asserting that he had not received the court's initial order setting the earlier date and so had not known of the deadline. In response to Petitioner's second request, the court granted Petitioner a second return date of September 7, 2012, and Petitioner, through his attorney, filed an application for supervisory review in the Louisiana Court of Appeal for the First Circuit on that date. The state appellate court, however, rejected the writ application on November 19, 2012, without substantive review, finding that Petitioner had failed to comply with the procedural requirements set forth in the Uniform Rules, Louisiana Courts of Appeal, which Rules identify specific documentation that a petitioner must provide when filing an

application for supervisory review.[3]   Specifically, the appellate court stated:

>    **WRIT NOT CONSIDERED.**   Relator failed to comply with Uniform Rules of Louisiana Courts of Appeal, Rule 4-2 and 4-3, by failing to request a return date within 30 days of the September 2011 ruling.   Relative to the May 2012 ruling, relator failed to comply with Rules 4-3 and 4-5(C)(11), by failing to include documentation of the initial request for a return date and the return date.   Relator failed to comply with Rule 4-5(A), in that the application does not contain an affidavit verifying the allegations of the application and certifying that a copy has been delivered or mailed to the respondent judge and to opposing counsel, and listing the addresses and telephone numbers of the respondent judge and opposing counsel.   Relator also failed to comply with Rule 4-5(C)(6), (7), (8), and (10), by failing to include a copy of the September 2011 judgment, a copy of the judge's reasons for judgment (if any), a copy of the indictment, and a copy of the pertinent court minutes.   Moreover, although it is not a violation of the Uniform Rules, we note that relator failed to include a copy of the trial transcript, a transcript of the postconviction hearing, and a copy of any exhibits introduced at the hearing….
>
>    Supplementation of this writ application and/or an application for rehearing will not be considered.   See Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9.   If relator elects to file a new application in compliance with Uniform Rules of Louisiana Courts of Appeal, Rule 4-5, which includes proof that a timely return date was obtained and otherwise corrects the deficiencies noted herein, he may do so on or before January 22, 2013.   However, any future filing should include the entire contents of this application, a copy of this ruling, the missing items noted above, as well as a copy of the original return date, any requests for extensions to the return date, and any extensions set by the district court.

*See* State Court Record, Vol. I.   Petitioner, through his attorney, thereafter filed a second application for supervisory review with the intermediate appellate court – as authorized by the court – on January 15, 2013 providing additional documentation in an attempt to comply with the court's directive.   *See* State Court Record, Vol. III.   The appellate court, however, On March

---

3     Rule 4-5 of the Uniform Rules, Louisiana Courts of Appeal, provides in pertinent part that an application for supervisory writs "shall contain ... a copy of the judgment, order, or ruling complained of ... a copy of the judge's reasons for judgment, order, or ruling ... a copy of each pleading on which the judgment, order, or ruling was founded, including ... the indictment or the bill of information in criminal cases ... a copy of any opposition and any attachments thereto filed by a party in the trial court ... a copy of pertinent court minutes ... the notice of intent and return date order required by Rules 4-2 and 4-3 ...."

14, 2013, again declined to review the writ application on procedural grounds, stating:

> **WRIT NOT CONSIDERED**.   Relator's application does not comply with the Uniform Rules of Louisiana Courts of Appeal, Rules 4-2, 4-3, 4-5(C)(6), (9), (10) and (11). Supplementation of this writ application and/or an application for rehearing will not be considered.   <u>See</u>, Uniform Rules of Louisiana Courts of Appeal, Rules 2-18.7 & 4-9.

*See State v. Brown*, 2013 WL 12125419 (La. App. 3rd Cir. Mar. 14, 2013).   From this determination, Petitioner's attorney filed, on April 12, 2013, a timely writ of supervisory review in the Louisiana Supreme Court, asserting both that the appellate court had unfairly rejected his writ application on procedural grounds and that the substantive claims asserted in the writ application were meritorious.   Petitioner also filed a *pro se* writ application for supervisory review before the Supreme Court (asserting the same claims) and, in addition, filed on or about May 16, 2013 a third application for supervisory review before the intermediate appellate court, this time *pro se*.   Petitioner's *pro se* application for supervisory review was denied without comment by the intermediate appellate court on August 28, 2013, and the two pending writ applications before the Louisiana Supreme Court, one filed by counsel and one filed *pro se*, were consolidated and denied without comment on January 17, 2014.   *See State v. Brown*, 130 So.3d 339, 2014 WL 321797 (La. 2014), and *State ex rel. Brown v. State*, 130 So.3d 339, 2014 WL 321807 (La. 2014).

Finally, on or about February 14, 2014, Petitioner filed his federal habeas corpus application in this Court.[4]   Based on the foregoing procedural history, the Court concludes that Petitioner's application is untimely.

---

4       Although Petitioner's application for federal habeas corpus relief was docketed as filed in this Court on February 17, 2014, it was apparently signed by Petitioner on February 14, 2014. *See* note 1, *supra*.

Petitioner's Claims Are Untimely

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody.    This limitations period begins to run on the date upon which the judgment becomes final (by conclusion of direct review or through expiration of the time for seeking such review).    28 U.S.C. § 2244(d)(1)(A).    As provided by statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending with respect to the pertinent judgment or claim tolls the one-year limitations period and shall not be counted toward any part of that period.    28 U.S.C. § 2244(d)(2).    In contrast, the time during which there is *no* properly-filed state court application pending is counted against the one-year period.    Applications must remain both "properly filed" and "pending" to provide a petitioner with the benefit of statutory tolling.    To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and procedural rules governing filings.    *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000).    Further, a state application is "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state consideration.    *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, as noted above, Petitioner's conviction became final on June 26, 2008, ninety days after denial of his application for supervisory review in the Louisiana Supreme Court on March 28, 2008 in connection with his direct appeal.   *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).   Petitioner thereafter waited until March 24, 2009, a full year after the decision of the Louisiana Supreme Court and approximately nine months after the finality of his conviction, before his retained attorney filed an application for post-conviction relief in state court. Inasmuch as there were no collateral review proceedings pending during that interval, 270 days elapsed on the one-year clock.   Thereafter, statutory tolling commenced on March 24, 2009 when Petitioner filed his PCR application in the state district court.   The one-year period thereafter remained tolled until denial of Petitioner's PCR application in the state trial court on May 30, 2012, and for an additional thirty (30) days thereafter, or until June 29, 2012, because Louisiana procedural law provides for a 30-day period to proceed to the next level of state review and because, under federal law, as explained above, the limitations period remains tolled both during the time that a properly-filed post-conviction review application is pending before the state trial court and during the interval after the ruling thereon when Petitioner has the right under state procedural law to proceed to the next level of appellate review.   *Melancon v. Kaylo*, *supra,* 259 F.3d at 406.   Notwithstanding, as hereafter discussed, the Court concludes that several periods of un-tolled time elapsed thereafter, leading to the conclusion that Petitioner's habeas corpus application is untimely.

First, whereas Louisiana law allows a thirty-day period to proceed to the next level of appellate review after the denial of a PCR application, Louisiana law also requires that a petitioner request and obtain, during the 30-day period, a "return date" from the trial court for filing his appellate writ application.   *See* Rules 4-2 and 4-3 of the Uniform Rules, Louisiana Courts of

Appeal.   Although the Rules require that a return date "shall not exceed 30 days from the date of notice [of the order being reviewed]," Rule 4-3 allows a party to request an extension by motion "filed within the original or an extended return date period."   In addition, the courts have concluded that an implicit extension of the return date is granted when an applicant timely requests a return date within the 30-day period, and the court sets a return date that is outside of the 30-day period.   *See Dixon v. Cain*, 316 F.3d 553, 554 (5th Cir. 2003).

Applying the foregoing to the instant case, upon the denial of Petitioner's PCR application in the state trial court on May 30, 2012, Petitioner then had, in the absence of a requested extension, thirty (30) days, or until June 29, 2012, within which to file a request for a return date in the state trial court.   In the instant case, the record reflects that Petitioner's attorney did in fact timely file, on June 20, 2012, within the 30-day period, a request for a return date to file a writ application in the intermediate appellate court.   As noted above, had the trial court then set a return date outside of the 30-day period, this would have been interpreted as an extension of time to file Petitioner's writ application.   *Dixon v. Cain, supra.*   According to the record, however, the trial court signed an Order on June 20, 2012 setting a return date of June 26, 2012, also within the 30-day period, and Petitioner did not meet that deadline.   As a result, the time-clock again began to run upon the conclusion of the 30-day period, *i.e.,* on June 29, 2012.   Petitioner's attorney thereafter filed a second request for a return date on July 26, 2012, asserting therein that he had not received notice of the court's initial Order setting an earlier return date.[5]   In response to Petitioner's second request, the trial court signed a second Order on August 10, 2012 granting Petitioner a second

---

5        There is no suggestion that Petitioner's attorney inquired about the return date during the ten days remaining of the 30-day period that the Uniform Rules envision the return date will be set by the state court, or that Petitioner's attorney requested an extension during that period.

return date of September 7, 2012, which deadline Petitioner's attorney did in fact meet when he filed an initial application for supervisory review in the Louisiana First Circuit Court of Appeal on that date.   Notwithstanding, it appears from the foregoing that there was at least a 42-day period of time – between June 29, 2012, *i.e.,* the conclusion of the thirty-day deadline for perfecting appellate review absent an extension, and August 10, 2012 when Petitioner was arguably granted an extension in the form of an Order setting a second return date[6] – during which there was no properly-filed post-conviction review proceeding pending.   *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) ("Even if we accept [Petitioner's] contention that he did not receive notice …, the state petition was not 'pending' during the subsequent … delay").

In addition to the foregoing, as discussed hereafter, when Petitioner filed his initial writ application before the intermediate appellate court on September 7, 2012, the writ application did not in fact restart statutory tolling because the application was procedurally deficient and so was not "properly-filed" for the purpose of such tolling.   As a result, Petitioner is not entitled to statutory tolling during the time that that application was pending.

As previously explained, a state application for post-conviction relief is "properly filed" pursuant to § 2244(d)(2) only "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."   *Artuz v. Bennett, supra*, 531 U.S. at 8.   *See also Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir. 1999) (holding that a properly filed application is

---

6       An argument may be made that when Petitioner's attorney requested a second return date on July 26, 2012, *after* the 30-day deadline for requesting same had elapsed, the Order dated August 10, 2012, setting a second return date, was not then effective to grant an extension of time and to restart statutory tolling, and that Petitioner in fact needed to file a properly completed writ application in order to commence such tolling.   The Court need not decide this issue, however, because as discussed hereafter, Petitioner's two subsequent writ applications in the Louisiana Court of Appeal for the First Circuit were not properly filed and so did not entitle Petitioner to statutory tolling.

"one that conforms with a state's applicable procedural filing requirements").    In *Larry v. Dretke*, 361 F.3d 890 (5th Cir. 2004), the Fifth Circuit summarized the law governing when a state application is "properly filed," and concluded, relative to procedural filing rules, that if the applicable procedural rule "provides 'no exceptions' and the court need not examine 'issues related to substance' to apply the procedural rule, then the application is not 'properly filed.'"    *Id.* at 893, *citing Emerson v. Johnson*, 243 F.3d 931, 933-34 (5th Cir. 2001) (finding that an application is not "properly filed" where the procedural rule at issue "seemingly provides no exceptions and does not require an examination of the merits of [Petitioner's] claim").    The decision in *Edwards v. Cockrell*, 2003 WL 21321231 (N.D. Tex. June 5, 2003), *affirmed*, 116 Fed. Appx. 470 (5th Cir. 2004), is also instructive.    In that case, the state habeas petitioner had failed to comply with a procedural rule that required him to set out the grounds for relief in the body of his habeas corpus form and not by reference to an attached document.    The state clerk of court nonetheless accepted the application for filing, and the trial court substantively addressed the claims asserted therein.    Upon subsequent review by the state appellate court, however, that court rejected the petitioner's application in its entirety because the initial filing had been improper from the start because it had failed to comply with the referenced procedural rule.    When the petitioner thereafter filed an application for federal habeas review, the federal district court determined that the petitioner's application was untimely, specifically because, although the petitioner's application had been "pending" for some period of time before the state courts, it had not been "properly filed" so as to interrupt the limitations period.    Moreover, the mere fact that the application had been accepted for filing in the state trial court and had been substantively reviewed by that court did not render the state application "properly filed."    This determination was thereafter upheld by the United States Court of Appeals for the Fifth Circuit.    *See Edwards v. Dretke*, 116 Fed. Appx. 470 (5th

Cir. 2004).

Applying the foregoing to the facts of the instant case, when the state trial court granted Petitioner a second return date of September 7, 2012 and when Petitioner filed his writ application in the First Circuit court on that date, it was essential, in order for statutory tolling of the limitations period to apply, that the pending appellate application be seen to have been "properly filed." *Artuz v. Bennett, supra*, 531 U.S. at 9 (recognizing that a state court application for post-conviction relief may be "*pending*, but not *properly filed*" for purposes of tolling) (emphasis in original)). Notwithstanding, the state appellate court thereafter explicitly determined that the application for supervisory review before that court was not properly filed and would not be considered, specifically because Petitioner had not provided with his application the documentation required by Rules 4-3 and 4-5 of the Uniform Rules.   In this regard, Rule 4-5 of the Louisiana appellate court rules sets forth the documentation that "shall" be filed with an application for supervisory review.   There is no exception stated in the Rule that would allow the appellate court to review an application that is not compliant therewith.   Moreover, as a practical matter, the reviewing court would be unable to evaluate the substantive merit of a petitioner's claims in the absence of the required documentation.   Accordingly, even if Petitioner's application for supervisory review in the intermediate appellate court was "pending" after he filed same on September 7, 2012, it was procedurally deficient and was explicitly rejected for that reason, and so was never "properly filed" within the meaning of § 2244(d)(2).   As a result, Petitioner is not entitled to statutory tolling during the subsequent pendency of that application.   *See Artuz v. Bennett, supra*, 531 U.S. at 9. Instead, there was only an improperly filed application pending between the date it was filed, September 7, 2012, and the date it was denied without substantive consideration on November 19, 2012.   Accordingly, an additional period of 73 days elapsed during that interval.

The above conclusion is supported by other decisions in this Circuit.   In *Dugas v. Cain*, 2010 WL 2816247 (W.D. La. May 25, 2010), *supplemented in* 2010 WL 2816250 (W.D. La. June 24, 2010), the United States District Court for the Western District of Louisiana addressed a situation similar to that presented herein.   In that case, after denial of the petitioner's PCR application in the state trial court, the petitioner apparently filed two writ applications in the intermediate appellate court.   Both of these applications were denied on procedural grounds, the first because the application was premature and the second because, as here, the petitioner failed to comply with Louisiana Rule 4-5 by failing to provide copies of pertinent underlying pleadings on which the conviction was founded.   In thereafter addressing the timeliness of the petitioner's application for habeas corpus relief in federal court, the Court concluded that neither of these applications had tolled the limitations period "because both of the writs ... were not 'properly filed.'"   *Id.* at *5.   *See also* 2010 WL 2836278 (W.D. La. July 15, 2010) (adopting the Magistrate Judge's Report and Recommendation entered in that case).

Similarly, in *Mark v. Michael*, 2008 WL 4365929 (E.D. La. Sept. 23, 2008), an identical situation was presented, and whereas the Court ultimately concluded that the petitioner's habeas corpus application was independently untimely, the Court addressed the effect that would have been given to the petitioner's state court application for supervisory review in the intermediate appellate court, which application had failed to comply with Rule 4-5 and which application had been explicitly denied for that reason.   As stated by the Court in *Mark*:

> [E]ven if the disputed writ application had been [timely] filed ..., it would change nothing here because it was not "properly filed" as required for tolling credit under 28 U.S.C. § 2244(d)(2).   It is clear that a "properly filed application" is "one that conforms with a state's applicable procedural filing requirements," *i.e.* "those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review."   *Villegas v. Johnson*, [*supra*].   Therefore, to be "properly filed," an application must comply with the applicable "rules governing filings," including "the form

of the document." *Artuz v. Bennett*, [*supra*].   Under the applicable rules of Louisiana state courts, an appellate court writ application must include all pertinent documents from the lower court ....   Louisiana Uniform Rules - Courts of Appeal, Rule 4-5.   Without any level of substantive review, the Louisiana First Circuit Court of Appeal rejected petitioner's application for noncompliance with that procedural rule ....   Therefore, regardless of when [the petitioner's] application was filed, it was not "properly filed."

*Id.* at *3 n. 18.   *See also Clarke v. Rader*, 2012 WL 589207 (M.D. La. Jan. 20, 2012), *affirmed*, 721 F.3d 339 (5th Cir. 2013) (concluding that a writ application filed without the documentation required by the Rule 4-5 was "not 'properly filed' for purposes of § 2254(d)(2)" and did not toll the limitations period); *Howard v. Cain*, 2011 WL 3794909 (M.D. La. Aug. 2, 2011) (same).   Based on the foregoing, this Court similarly concludes that Petitioner's filing of a writ application in the Louisiana appellate court on September 7, 2012, which application did not comport with the procedural requirements of Uniform Rules 4-3 and 4-5 and which application was rejected and "not considered" for that reason, did not result in a "properly filed" application within the meaning of 28 U.S.C. § 2244(d)(2).

Totaling up the foregoing figures (270 + 42 + 73 = 385), and pretermitting consideration of other clear subsequent periods of time during which there were no post-conviction or other collateral review proceedings pending before the state courts,[7] it is clear that more than a year of

---

7   For example, Petitioner's second application for supervisory review before the intermediate appellate court was also improperly filed.   Specifically, in rejecting Petitioner's first application, the appellate court nonetheless granted Petitioner leave to re-file a writ application on or before January 22, 2013.   Petitioner's attorney thereafter complied with that deadline by re-filing Petitioner's application on January 15, 2013.   Notwithstanding, the appellate court again rejected Petitioner's application on March 14, 2013 on similar procedural grounds and again declined to undertake any substantive consideration of Petitioner's claims.   Thus, there was no properly-filed application pending during the entire pendency of that writ application, comprising an additional 58 days.   In addition, the Court notes that an additional period of 28 days elapsed after the conclusion of Petitioner's post-conviction relief proceedings in the state courts (through denial of his Louisiana Supreme Court writ application on January 17, 2014) before the filing of his federal habeas corpus application herein on February 14, 2014.

un-tolled time elapsed before Petitioner filed his habeas corpus application in this Court on February 14, 2014.   This conclusion compels the determination that Petitioner's application before this Court is untimely.

Petitioner Is Not Entitled To Equitable Tolling Of The Limitations Period

In attempting to avoid the effect of the limitations bar in this case, Petitioner seeks to place the blame squarely on the shoulders of his retained post-conviction attorney and argues that his attorney effectively abandoned him during the post-conviction proceedings and/or intentionally sought to sabotage those proceedings.   However, although this Court has the power to equitably toll the limitations period in appropriate instances, *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998), the Court finds no compelling reason to find that equitable tolling applies in this case.    In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances."   *See United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). The doctrine of equitable tolling is applied sparingly and "applies principally where the plaintiff is actively misled … about the cause of action or is prevented in some extraordinary way from asserting his rights."   *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).   "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify."   *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).   Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.   *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).   Ignorance of the law, lack of knowledge of filing deadlines, a temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not generally sufficient to warrant equitable tolling.   *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*,

204 F.3d 168, 171-2 (5th Cir.).    Further, equitable tolling "is not intended for those who sleep on their rights."   *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012).    Thus, a federal habeas petitioner is required to act with diligence and alacrity during all parts of the post-conviction process, both before the filing of state court post-conviction review proceedings, during the pendency thereof, and after the denial thereof in the state appellate courts.   *Ramos v. Director*, 210 WL 774986, *4 (E.D. Tex. March 1, 2010).    "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible diligence,"   *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis."   *Id.* at 649-50.    Whereas egregious and extraordinary misconduct by a post-conviction attorney may in certain circumstances warrant equitable tolling, a "garden variety claim of excusable neglect" does not rise to this level.   *Id.* at 651.

   In undertaking the equitable tolling analysis, the Court first notes that Petitioner waited approximately nine months after his convictions became final, or until March 24, 2009, before he filed his application for post-conviction relief in the state trial court.   Thus, 270 days of the one-year period were allowed to elapse before Petitioner first interrupted the time clock.   This factor alone weighs against a finding of equitable tolling in this case.   *See Schmitt v. Zeller*, 354 Fed. Appx. 950, 951 (5th Cir. 2009) (declining to find equitable tolling where the petitioner waited 10 months after his conviction became final before applying for state habeas relief: "We have recognized that a component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry"); *Johnson v. Quarterman*, 483 F.3d 278, 287 (5th Cir. 2007) (declining to find equitable tolling where the petitioner's attorney waited until the last possible day and then experienced computer problems which prevented timely filing).   *See also Green v. Stephens*, 565 Fed. Appx. 342 (5th Cir. 2014)

(finding that a 6-month delay before retaining counsel to file a post-conviction relief application was not indicative of due diligence); *Tsolainos v. Cain*, 540 Fed. Appx. 394 (5th Cir. 2013) (same with delay of 9½ months in retaining counsel); *Page v. Stephens*, 2014 WL 2781165 (W.D. Tex. June 19, 2014) (same with delay of 7 months in retaining counsel), *citing Palacios v. Stephens*, 723 F.3d 600 (5th Cir. 2013), wherein the court weighed heavily against a petitioner a similar "lengthy, unexcused delay in hiring an attorney." *Cf., Nelms v. Johnson*, 51 Fed. Appx. 482 (5th Cir. 2002) (noting that the Court had "found no case in which equitable tolling was granted after a petitioner had let ten months of the … limitations period slip by"). Notwithstanding, although this factor weighs heavily against Petitioner in this case, the Court will not apply this factor conclusively against him inasmuch as the Court has not determined from the record when Petitioner first retained the services of an attorney.[8]   To the contrary, the Court finds instead that the actions of Petitioner's post-conviction attorney in this case do not rise to the level of "rare and exceptional circumstances" or extraordinary misconduct that would support the application of equitable tolling.

The record reflects that Petitioner's attorney filed a timely and well-supported application for post-conviction relief in the state trial court on March 24, 2009. Additional pleadings and

---

8       In addition, whereas Petitioner was arguably not legally required to file – or request that his attorney file – an earlier "protective" federal habeas corpus application when he learned of potential lapses in the proceedings that might affect the limitations period, so as to show that he was acting with diligence, *see Palacios v. Stephens*, 723 F.3d 600, 607-08 (5th Cir. 2013), *citing Pace v. DeGuglielmo*, 544 U.S. 408, 416 (2005), such a filing would have potentially protected him from the running of the limitations period, and his failure to do so weighs heavily against a finding of equitable tolling in this case. *Id. See also Darden v. Sobina*, 477 Fed. Appx. 912, 918 (3d Cir. 2012) (citing *Pace* and finding that a prisoner who failed to file a protective petition was not diligent); *Bellon v. Neven*, 2014 WL 4104098, *6 (D.Nev. Aug. 19, 2014) (citing *Pace* and finding that a prisoner who failed to file a protective petition when circumstances warranted it was not reasonably diligent).

motions were thereafter filed over an extended period of time and, ultimately, an evidentiary hearing was conducted in the trial court on January 20, 2012 on one of Petitioner's post-conviction issues.   Petitioner's attorney participated in that hearing and thereafter filed a well-reasoned post-hearing memorandum.   Upon the denial of Petitioner's application by the state trial judge on May 30, 2012, Petitioner's attorney filed a timely request for a return date to proceed in the intermediate appellate court as required by Louisiana procedural rules.   Although the attorney did not thereafter file an appellate writ application by the return date provided, June 20, 2012, this was purportedly because he did not receive notice thereof.   Notwithstanding, he made inquiry about the return date within a short period of time (approximately one month later), and thereafter immediately filed a second motion requesting a return date.   Upon the granting of that motion on August 10, 2012, Petitioner's attorney filed a writ application in the state appellate court on the return date provided, September 3, 2012.   When that writ application was thereafter rejected by the state appellate court on November 19, 2012 because of non-compliance with procedural rules, Petitioner's attorney then filed a second writ application on January 15, 2013, within the time allowed for him to do so by the appellate court, in an attempt to satisfy the court's requirements. Whereas that second writ application was also rejected because of procedural deficiencies, on March 14, 2013, Petitioner's attorney had nonetheless supplemented the application with at least some of the documentation requested by the appellate court in an attempt to comply therewith. Upon notification that the second writ application had been denied, Petitioner personally expressed dissatisfaction with the efforts of his attorney and notified both the attorney and the courts, by correspondence dated April 7, 2013, of his wish to terminate the attorney-client relationship. Upon such notification, Petitioner's attorney apparently contacted Petitioner by telephone on or about April 10, 2013 and, with Petitioner's implicit acquiescence, ultimately filed a timely writ

application in the Louisiana Supreme Court on April 12, 2013, so as not to run afoul of the 30-day deadline within which to do so.[9]   At some point thereafter, during the pendency of Petitioner's writ proceedings in the Louisiana Supreme Court, the attorney-client relationship between Petitioner and his attorney was in fact severed by motion filed in the that Court, and substitute counsel pursued Petitioner's claims to completion in the state courts.

Based on the foregoing recitation, this Court concludes that Petitioner has not met his burden of proof in establishing his entitlement to equitable tolling in this case.   In this context, the Fifth Circuit has determined that equitable tolling is not warranted where a petitioner's state habeas petition is non-compliant due to a failure to comply with state procedural rules.   *Jones v. Stephens*, 541 Fed. Appx. 499, 504 (5th Cir. 2013); *Dugas v. Cain, supra* (denying equitable tolling where appellate writ application filed by attorney was deficient).   Where a petitioner has failed to comply with the state's rules, it is the petitioner's own actions, rather than the state's actions, that have caused the untimeliness of his petition.   *Id.   See also Larry v. Dretke*, *supra*.   In addition, to constitute an extraordinary circumstance based upon the actions of post-conviction counsel, the behavior must be egregious and extraordinary.   *See Henderson v. Thaler*, 626 F.3d 773, 778 (5th Cir. 2010).   It cannot be "garden variety" behavior that amounts to ordinary misconduct or neglect on the part of the attorney.   *Id.   See also Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel").

---

9    Petitioner has provided a partial transcript of the telephone conversation that he apparently had with his attorney on or about April 10, 2013.   That telephone conversation concluded with Petitioner's attorney indicating that he would plan to file a writ application with the Louisiana Supreme Court and with Petitioner stating, "it's up to you …. I mean it can't hurt nothing."   *See* R. Doc. 1-5 at p. 7.

Ineffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during a post-conviction collateral attack upon a criminal conviction. *United States v. Petty*, 530 F.3d 31, 366 (5th Cir. 2008).   Even a petitioner who is represented by incompetent counsel is required to exercise due diligence in pursuing his rights. *See Manning v. Epps*, 688 F.3d 177, 184-85 (5th Cir. 2012).   In those cases where attorney misconduct has been found to even approach being sufficiently egregious to potentially warrant equitable tolling, the conduct has involved "far more serious instances of attorney misconduct" than mere attorney error or neglect, as where the attorney has abandoned the petitioner entirely, has falsely and repeatedly misrepresented that a timely petition has been filed, and/or has ignored numerous attempts at contacting the attorney by telephone and correspondence over a long period of time. *See, e.g., Holland v. Florida*, *supra*, 560 U.S. at 652-53 (concluding that equitable tolling may apply where a petitioner has been actively misled or abandoned by his attorney, but that mere attorney negligence does not suffice).   Further, even when a petitioner's attorney has engaged in active misrepresentation, such conduct may be seen to warrant equitable tolling only if a petitioner has reasonably relied upon the misrepresentation to his detriment. *See Hailey v. Stephens*, 532 Fed. Appx. 571, 573 (5th Cir. 2013) (finding no egregious conduct sufficient to warrant equitable tolling where the petitioner identified no deceptive misrepresentation before the expiration of the limitations period and noting that only misrepresentations occurring before the conclusion of the limitations period "would be relevant because anything that happened after the limitation period had expired could not have 'stood in [the] way' of a timely filing"); *United States v. Kelly*, 2015 WL 1897595, *4 (E.D. La. April 27, 2015); *Page v. Stephens*, 2014 WL 2781165, *3 (W.D. La. June 19, 2014).

The actions of Petitioner's attorney in this case fail to rise to the level of rare, egregious

and exceptional circumstances that justify the application of equitable tolling.   Petitioner's

attorney engaged in a spirited presentation of Petitioner's claims commencing with the filing of

Petitioner's PCR application in state court in March 2009 and proceeding through an evidentiary

hearing conducted in the trial court in January 2012.   At no time thereafter has it been shown that

Petitioner's attorney abandoned the post-conviction process or actively and intentionally

misrepresented to Petitioner the course thereof.   In filing an initial application for supervisory

review in the state appellate court in September 2012, Petitioner's attorney provided certain

documentation in connection therewith but not apparently all of the documentation called for by

the Uniform Rules of the Louisiana appellate courts.   *See* R. Doc. 1-7 at pp. 24 and 28.   Whereas

this deficiency caused Petitioner's writ application to be not properly filed in the appellate court

for purposes of statutory tolling, this lapse may be attributed to mere "garden variety" negligence

and not to rare and egregious misconduct on the part of Petitioner's attorney.   In this regard, as

noted above, multiple reported decisions have addressed similar circumstances in which writ

applications were rejected by the appellate courts because of a similar lack of documentation.

*See, e.g. Dugas v. Cain, supra; Mark v. Michael, supra; Clarke v. Rader, supra; Howard v. Cain,*

*supra*.

Upon rejection of the first-filed appellate writ application, Petitioner's attorney thereafter

re-submitted the writ application to the First Circuit in January 2013 – within the time allowed by

the court to do so.   In doing so, Petitioner's attorney supplemented the application with additional

documentation that he believed responded to the First Circuit's directive.   *See* R. Doc. 1-4 at p.

54 (where Petitioner's attorney indicated to Petitioner during a telephone conversation, "they

needed – they wanted the transcripts from the evidentiary hearing…. So I filed it.   I got the

transcript and I submitted that to them"); R. Doc. 1-4 at p. 57 (where Petitioner's attorney similarly

indicated, "they said you needed more information, you don't have this, you don't have that…. I sent them all the stuff they were looking for and they still said writ not considered"); and Petitioner's memorandum in support of his writ application before the Louisiana Supreme Court, dated April 15, 2013, p. 8 (wherein Petitioner's attorney signified to the Court, in contesting the failure of the lower court to consider the writ application, that he had provided to the intermediate appellate court "the evidentiary hearing transcript … along with any other documentation necessary for the First Circuit to rule on the merits of the claim").   The fact that the second application was again found to be procedurally deficient by the appellate court is an indication that Petitioner's attorney again failed to comprehend the procedural rules and/or miscalculated the significance thereof.   This again, however, is mere attorney error or incompetence that does not rise to the level of abandonment or "rare and exceptional" egregious circumstances.   In both *Holland v. Florida, supra*, and in *Maples v. Thomas*, 565 U.S. 266 (2012), the Supreme Court focused upon the petitioner's assertion that he had effectively been abandoned by his post-conviction attorneys, leaving him unrepresented, and concluded that such abandonment could constitute egregious misconduct that warranted the application of equitable tolling or that constituted "cause" for purposes of overcoming a state procedural default.   As the Court noted in *Maples*, however, absent abandonment, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' … because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent."   *Id*. at 280.

In the instant case, there is no suggestion that Petitioner's attorney abandoned him during the course of post-conviction proceedings or engaged in active and intentional misrepresentation. To the contrary, Petitioner's attorney even took action to preserve Petitioner's rights in the

Louisiana Supreme Court by filing a writ application before that body notwithstanding that Petitioner was apparently undertaking to terminate the attorney-client relationship.   Whereas Petitioner contends that his attorney was intentionally acting to "sabotage" Petitioner's post-conviction proceedings, this is a conclusory assertion that is not supported by anything in the record.[10]   Accordingly, the Court declines to find that equitable tolling applies in this case.

Finally, Petitioner invokes the recent United States Supreme Court decisions of *Martinez v. Ryan*, 566 U.S. 1309 (2012) and *Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911 (2013), and contends that the Court should excuse the untimeliness of his federal habeas corpus application and consider the merits of his habeas claims.   In *Martinez v. Ryan*, the Court held that a state-imposed procedural default will not bar a federal habeas court form hearing a substantial claim of ineffective assistance of counsel at trial if there was no counsel in the collateral proceeding or if said counsel was ineffective. 132 S.Ct. 1309, 1321 (2012).   "However, *Martinez* does not address nor provide any remedy when a habeas corpus petition is untimely filed."   *Shank v. Cain*, 2016 WL 4473193 (E.D. La. Aug. 24, 2016), ci*ting Martinez v. Ryan, supra*.   Nor does *Trevino v. Thaler.   Id.*   Specifically, "*Martinez* and *Trevino* do not provide a basis for reviewing the merits of an untimely filed federal habeas petition, even if it includes an ineffective assistance of counsel claim."   *Id.   See also, e.g., Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) (holding that "the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); *Green v. Cain*, 2015 WL 5060608 (E.D. La. Aug. 25, 2015) ("The equitable ruling in *Martinez* did not

---

10    Petitioner's sole apparent basis for contending that his attorney was seeking to sabotage the proceedings is the assertion that in two unrelated habeas proceedings, the attorney allegedly made similar errors that resulted in prejudice to the petitioners in those cases.   The Court is not persuaded by Petitioner's contentions in this regard.

encompass, much less excuse, the untimely filing of a federal habeas petition"); *Reynolds v. Stephens*, 2014 WL 2575752 (N.D. Tex. June 9, 2014) (concluding that *Martinez* and *Trevino* address procedural default rather than the limitations period and do not support a petitioner's claim for equitable tolling); *Smith v. Rogers*, 2014 WL 2972884 (W.D. La. July 2, 2014) (same); *Falls v. Cain*, 2014 WL 2702380, at *3 (E.D. La. June 13, 2014) (same).   Accordingly, *Martinez* and *Trevino* provide no support to Petitioner in this case.[11]

Based on the foregoing, the Court concludes that Petitioner's federal habeas corpus application is untimely and that he is not entitled to equitable tolling.   Accordingly,

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(A).   Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   A certificate of appealability may issue only if a habeas

---

11      In certain rare instances, a petitioner may seek to avoid the effect of untimeliness by establishing that he is in fact innocent of the charged offenses.  Specifically, in *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924 (2013), the United States Supreme Court concluded that actual innocence, if proven, may serve as a gateway through which a petitioner may pass to avoid a procedural impediment such as the statute of limitations.  The Court cautioned, however, that viable actual-innocence gateway claims are rare, explaining that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of ... new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* at 1928, *citing Schlup v. Delo*, 513 U.S. 298, 329 (1995) (internal quotation marks omitted).  To be credible, a claim of actual innocence requires that a petitioner support his allegations of constitutional error with new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.  *Schlup v. Delo, supra*, 513 U.S. at 324.  In the instant case, although Petitioner has included a citation to the *McQuiggin* case, he has presented no new evidence, much less evidence sufficient to support a claim of actual innocence, and he has therefore failed to set forth a viable claim of actual innocence sufficient to avoid the operation of the limitations bar.

petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. §

2253(c)(2).    In cases where the Court has rejected a petitioner's constitutional claims on

procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable

whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling."   *Ruiz v.*

*Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).    (Emphasis in original).    In the instant case, the

Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application

or the correctness of the procedural ruling.    Accordingly, in the event that Petitioner seeks to

pursue an appeal in this case, a certificate of appealability shall be denied.

     Accordingly, based on the foregoing

     **IT IS ORDERED** that Petitioner's application for habeas corpus relief is hereby **DENIED**

as untimely pursuant to 28 U.S.C. § 2244(d).

     **IT IS FURTHER ORDERED** that, in the event that Petitioner seeks to pursue an appeal

in this case, a certificate of appealability is hereby **DENIED**.

     Signed in Baton Rouge, Louisiana, on <u>March 24, 2017</u>.

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**